# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE BRYAN,<br><br>                Plaintiff,<br><br>vs.<br><br>CITY OF CARLSBAD, et al.,<br><br>                Defendants. | CASE NO. 17cv697-LAB (BLM)<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND MOTIONS FOR LEAVE TO SUPPLEMENT AND TO ADD PARTY DEFENDANTS;**<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS; AND**<br><br>**ORDER OF DISMISSAL**<br><br>**[DOCKET NUMBERS 8, 17, 29, 30.]** |

Plaintiff Catherine Bryan, proceeding *pro se*, filed her complaint, bringing civil rights claims under 42 U.S.C. §§ 1983, 1985(w), and 1986; Elder Financial Abuse claims under Cal. Welfare Code §15610, and state law claims for fraud, deceit, intentional misrepresentation; and intentional and negligent infliction of emotional distress.

Bryan alleges that the City of Carlsbad's Code Enforcement Department unlawfully searched a residence where she lives. Although she refers to it as her home, the property was sold in a foreclosure sale in 2009.[1] (Compl., ¶ 7.) Although the complaint says unlawful

---

[1] Bryan unsuccessfully brought an earlier case challenging the foreclosure sale, 10cv1605-CAB (KSC), *Bryan v. Select Portfolio Servicing, Inc.* The Ninth Circuit affirmed the grant of summary judgment against her, and that case is now final. *Bryan v. Select Portfolio Servicing, Inc.*, 697 Fed. App'x 561 (9th Cir. 2017). The Court may, and does, take judicial notice of the docket and records in this related case. *See Trigueros v. Adams*, 658

searches occurred four times since October 23, 2009 (*id*.), the complaint only mentions one search, on March 29, 2017, which was conducted pursuant to a warrant.

Defendants filed a motion to dismiss, supported by requests for judicial notice. (Docket no. 8.) While that motion was pending, Bryan filed a motion for preliminary injunction (Docket no. 17), a motion for leave to file a supplemental complaint (Docket no. 29), and a motion for leave to add new party defendants. (Docket no. 30.)

Bryan claims that the house belongs to her, and her claim rests heavily on this allegation. She claims she prevailed in a case in this Court and that the Court ruled in her favor, determining that she was the owner of the house. (Compl., ¶30.) The only other case in which she has been a party in this Court is number 10cv1605-CAB (KSC), *Kokopelli Community Workshop*, et al. *v. Select Portfolio Servicing, Inc.*, et al.[2]

In fact, the reverse happened. In case 10cv1605, the Court ruled that Bryan cannot challenge the foreclosure sale and has no ownership interest in this property. (*See* Order Granting Summary Judgment (Docket no. 308) in case 10cv1605, at 7:12–19 (holding that Catherine Bryan had transferred her interest in the subject property to Kokopelli Community Workshop Corporation before the foreclosure, and therefore had no standing to challenge the foreclosure sale or otherwise claim title to the property).) (*See also* Order Denying Reconsideration (Docket no. 311) in case 10cv1605, at1:25–2:2 ("[P]laintiff Catherine Bryan had no title interest in the subject property at the time of foreclosure and thereafter.").) Bryan took an appeal, which was unsuccessful, and that case is now final.

/ / /

---

F.3d 983, 987 (9th Cir. 2011).

[2] Bryan is apparently referring to the first of at least two unlawful detainer actions filed against her, number 37-2009-00040923, *MTGLQ Investors, L.P. v. Catherine Bryan, Betty Bryan*, et al. She attaches a jury verdict form deciding that MTGLQ had not complied with the provisions of California Civil Code 2924 and was not entitled to possession of the premises. But it does *not* show, as Bryan claims, that she owns the house. According to Bryan, the outcome of that case was that the court ordered that she and her family were to "remain in lawful possession of the subject property until final resolution of Plaintiff's property rights by the Ninth Circuit Court of Appeals." (Compl., 14:11–15.) Even assuming that to be an accurate statement of the court's order (which she has not provided), the Ninth Circuit has now ruled, and the final determination is that Bryan is not the owner of the property.

**Motion for Preliminary Injunction**

The motion for preliminary injunction, which spans over 400 pages, is primarily aimed at the condemnation and demolition of the house where Bryan lives. These claims involve other parties who are not yet named as Defendants, and claims not yet added to this case. For reasons discussed at length below, Bryan's request to add these claims and parties is being denied. Furthermore, Bryan's motion falls far short of the standard for preliminary injunctive relief, and it is **DENIED**.

**Motion to File Supplemental Complaint; and Motion to Add Parties**

Bryan filed two motions, a motion to supplement her complaint and a motion to add new Defendants. Because the motions were unclear, the Court ordered her to supplement them, which she has done. (Docket no. 32.) Defendants have filed an opposition. (Docket no. 33.)

Bryan seeks to add a claim based on an inspection report she says is false, the City of Carlsbad's notice of order to repair, and a mandatory order to demolish the house unless upgrades and repairs were made. She says that violations identified by City officers are provably false and that she is unjustly being ordered to pay for repairs or her home will be demolished.

Bryan wants to name as new Defendants Carlsbad city council members who, she says, are acquiescing in the City's unconstitutional action. Although her proposed supplemental complaint mentions a conspiracy, the only overt act they are accused of is failing to act in response to a demand letter she sent them. (Docket no. 29-1, ¶¶ 6–7, 9, 10.) She has also attached a demand letter she sent to them, asking that they withdraw the order.

The statements in Bryan's motions are inaccurate. The order, which is attached as an exhibit, is addressed to her mother, Betty Bryan. (*See* Docket no. 29-3 at 4–5.) Plaintiff was not ordered to pay anything. Although she says she lived there for many years, she does not own the house. She has not shown that she has any legally cognizable interest in the house, or that the order would require her to pay or do anything. She therefore has not

shown she has standing to seek this relief. *See Stacey v. City of Hermitage*, 178 Fed. App'x. 94, 100 (3d Cir. 2006) (holding that son had not established standing to bring a § 1983 claim based on demolition of his mother's home). *See also Shanko v. Lake County*, 116 F. Supp. 3d 1055, 1062 (N.D. Cal., 2015) (". . . Plaintiff does not have standing to bring a Fourth Amendment claim for the County's destruction of someone else's home.")

Furthermore, the relief she is asking for is an order from this Court requiring the city council members to rescind the order and to undertake further proceedings such as consulting a structural engineer. As Defendants correctly point out, local legislators are absolutely immune from claims arising from their discretionary legislative activities. In *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998), for example, the Supreme Court unanimously held that city council members are entitled to absolute immunity from civil liability for their legislative activities. What Bryan has charged the city council members with is failure to take legislative action, which falls squarely within this holding. The Court has no authority to order the council members to vote to rescind the order, nor can the Court punish them for their failure to do so.

Finally, the notice itself provides an opportunity for appeal. (*See* Docket no. 29-3 at 5.) Bryan has not shown that she or anyone else appealed, or if they did, whether the matter is still pending or how it was resolved. A claim based on a non-final order appears to be unripe. *See Adam Bros. Farming v. County of Santa Barbara*, 604 F.3d 1142, 1147 (9th Cir.2010).

For these reasons, the motions are **DENIED**.

**Motion to Dismiss**

The complaint, including its exhibits is 128 pages long and not well organized. With the adjudication of Bryan's claim to ownership of the house in case 10cv1605, however, this case has been simplified considerably. Bryan filed an opposition to the motion to dismiss, supported by a request for judicial notice of twelve sets of documents.

/ / /

/ / /

**Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). In addition to allegations on the face of the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters judicially noticed. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). New or expanded allegations in opposition to a motion to dismiss are considered when deciding whether to grant leave to amend, but are not considered when ruling on a 12(b)(6) motion. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

The Court construes *pro se* pleadings in civil rights cases liberally, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987), but will not supply facts a plaintiff has not pleaded. *See Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).

The pleading standard is governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and not—as Bryan argues—by *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). *See Twombly* at 561–62 (disapproving the *Conley* standard). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to relief above a speculative level." *Id*. at 555. The complaint must contain enough factual allegations that, accepted as true, would state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. The Court need not accept conclusions of law as true, however, even if cast as factual allegations. *Id*. at 678. A claim may be dismissed under Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

The Court is required to address jurisdictional issues such as standing, before proceeding to the merits. *See Steel Co. v. Citizens for a Better Environ*., 523 U.S. 83, 93–94

(1998). Because Article III standing is jurisdictional, the Court must raise and address issues that call its jurisdiction into question, even if not briefed by the parties. *See Alabama Legislative Black Caucus v. Alabama*, __ U.S. ___ 135 S. Ct. 1257, 1269–70 (2015); *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1117 n.1 (9th Cir. 2017).

**Judicial Notice**

The Court may judicially notice facts that are not subject to reasonable dispute because they are generally known within the Court's territorial jurisdiction, or because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The Court may take judicial notice *sua sponte*, and must take notice if a party requests it and if the Court is supplied with the necessary information. But the Court need not take notice of documents that do not provide any additional relevant information, even if they would otherwise be the proper subject of judicial notice. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990) (declining to take judicial notice of another action "not relevant" to the case); *Neylon v. County of Inyo*, 2016 WL 6834097, at *4 (E.D. Cal., Nov. 21, 2016) ("[I]f an exhibit is irrelevant or unnecessary to deciding the matters at issue, a request for judicial notice may be denied.").

In support of their motion to dismiss, Defendants request judicial notice of four public records: an affidavit filed with the San Diego Superior Court in support of an application for an inspection warrant; the inspection warrant issued by Judge Dahlquist; the execution and return of the inspection warrant, submitted to the San Diego Superior Court; and Judge Bencivengo's order granting summary judgment in case 10cv1605. These official documents are all appropriate for judicial notice under Fed. R. Evid. 201, and the request is **GRANTED**. *See Bunkley v. Verber*, 2018 WL 1242168 at *2 (N.D. Cal, Mar. 9, 2018) (taking judicial notice of warrant, and of the name that appeared on it).

In the case of the affidavit, warrant, and return of service, the Court is taking note of their existence as public records, rather than of reasonably disputable facts they contain. For example, the existence of the warrant to search the house contradicts Bryan's allegation that

no warrant was sought or obtained.  And what the return of service shows that Bryan has mischaracterized what the return said. But the Court is not assuming, for instance, that facts stated in the return regarding the condition of the house and property are true. *See Bunkley* at *2 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001)) (taking notice of records' existence, but not of reasonably disputable facts contained in them). The exception is that Bryan has, to some extent, affirmed the accuracy of the documents. For example, some of the documents attached to the affidavit are also attached to the complaint, and the Court accepts those as part of the pleading for purposes of ruling on the motion to dismiss.  *See Ritchie*, 342 F.3d at 908.

Bryan requested notice of twelve documents, totaling over 200 pages, and giving a brief explanation of why she thinks each one is relevant.  The Court has taken notice of the records in case 10cv1605, including the notice of appeal (Ex. 1) Bryan proffers.

Exhibit 2 is an incident report by the Carlsbad fire department, apparently reporting on the RV fire alleged in the complaint.  It says the fire was unintentional and caused by a mechanical failure or malfunction.  It also says someone named Dean Griffin was repairing the engine when the fire ignited.  Such a report is probably not judicially noticeable. *See Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir.1985) (holding that the existence and content of a police report are not properly the subject of judicial notice). Even if it were noticeable, the Court would not assume the truth of the statements in it. Those statements are unhelpful to Bryan in any event, because they undermine the complaint's characterization of the RV fire and later events as some kind of cloak and dagger affair. The second part of Exhibit 2 is a motion for a change of venue in a different case, along with four subpoenas, none of which seem to have any bearing on this case.

Exhibit 3 is a copy of § 17912 of the California Building Code. While the Court can take notice of statutes, this statute has no bearing on this case.  The second part of Exhibit 3 is a collection of records relating to the house. The first of these is a "Residential Building Record." After this is a "Master Property Record" showing improvements on the land dating from 1958 to 1969.  This has some tangential bearing on the case, but nothing directly.

Apparently Bryan is relying on these to argue that because no other structures are listed on these records, those structures were never built. In fact, all it would show is that those structures were never recorded. If, as City officials apparently believed, unauthorized structures were built on the property and unpermitted alterations had been made, they would not be listed in these records.

Exhibits 4 through 6 are records from case 10cv1605, of which the Court has already taken notice.

Exhibit 7 is a copy of a declaration of a loan service accountant filed in Betty Bryan's bankruptcy case. Exhibit 8 is a copy of Betty Bryan's declaration in that case. The existence of these documents has no clear bearing on this case and, as noted, the Court will not take notice of the facts they aver.

Exhibit 9 is a recorded trustee's deed upon sale, and Exhibit 10 is a recorded notice of rescission. The Court could take notice of the fact that these were recorded, if it had any bearing on this case. But the fact that a trustee's sale took place is not in dispute. In the case of the notice of rescission, many of its exhibits are arguments authored by Bryan. Taking notice that these documents were recorded would not show that anything Bryan says in her notice of rescission is true or that her reasoning is valid. Moreover, the issue of Bryan's right of rescission was already adjudicated in case 10cv1605.

Exhibit 11 is a copy of the special verdict form that Bryan attached to the complaint. As noted below, this is attached to the complaint and therefore already part of the record. Furthermore, Bryan appears to have misinterpreted this as being helpful to her case.

Exhibit 12 is collection of correspondence. These do not meet the Fed. R. Evid. 201 standard and are not appropriate for judicial notice.

Bryan's request is **GRANTED**, with the limitations noted, as to Exhibits 1, 4, 5, and 6. It is **DENIED** as to Exhibits 2, 3, 7, 8, 9, 10, 11, and 12.

**Overview of Sufficiency of Allegations**

The complaint's factual allegations are generally not in chronological or any other recognizable order. Nevertheless, some are identified with dates or at least years, mostly

ranging from 2005 to 2009. Defendants argue that some claims are clearly time-barred. She mentions, for example, predatory mortgage loans, Defendant Scott Rudinger's alleged fraud, and an unlawful search of the home in 2005. (Compl., ¶¶ 35, 69.) Bryan, aware of the three-year limitations period for fraud, argues that because these are all part of an ongoing conspiracy, her claims all accrued on March 29, 2017, the date of the last overt act.

Many of Bryan's allegations are vague and conclusory. Her generalized allegations that every Defendant conspired with every other Defendant, all ratified all of each other's acts, and each one acted in concert with all the others as to all alleged activities (Compl., ¶¶ 14–20) do not meet the pleading standard. Formulaic and conclusory recitations like this are routinely rejected by courts as insufficient. *See, e.g., Choyce v. SF Bay Area Independent Media Center*, 2013 WL 6234628 at *9 (N.D. Cal., Dec. 2, 2013) (citing *Twombly*, 550 U.S. at 555); *Mindlab Media, LLC. v. LWRC Int'l, LLC*, 2012 WL 386695 at *2, *4 (C.D. Cal., Feb. 6, 2012) (quoting and rejecting similar allegations as being nothing more than bare legal conclusions). She mentions a number of incidents that she believes are connected, but does not say when they occurred or allege facts reasonably suggesting they are part of a conspiracy. (Compl., ¶¶ 12–13, 29.)

Bryan repeatedly says she has evidence and can provide witnesses to back up her claims, and she has attached some of the evidence to the complaint without explaining its significance or alleging facts. (Compl., ¶¶ 25, 31, 33, 38.) While it is common for *pro se* litigants to attach all documents they think might be relevant in some way, doing so isn't a sufficient way to raise all potential issues or claims that might arise out of or be related to those documents, because that would require the Court to overstep its role as neutral arbiter. "The courts cannot assume the role of advocates and create arguments never made." *Donahue v. United States*, 660 F.3d 523, 524 (1st Cir. 2011). *See also Jacobson v. Filler*, 790 F.2d 1362, 1364–66 (9th Cir. 1986)). Merely alleging that evidence or witnesses exist is even less helpful.

/ / /

/ / /

**Sufficiency of Conspiracy Allegations**

Allegations of conspiracy, like any other claim for relief, must meet the *Iqbal* pleading standard, and as such, must include facts sufficient to show facial plausibility by "defin[ing] the scope of any conspiracy . . . , what role [a conspirator] had, or when or how the conspiracy operated." *Lacey v. Maricopa County*, 693 F.3d 896, 937 (9th Cir. 2012) (en banc); *Iqbal*, 556 U.S. at 679. Here, Bryan has alleged only that the City, Rudinger, and MTGLQ Investors, L.P. engaged in a conspiracy from about 2004 onward to steal her house.

Other than the March 29, 2017 search, the only overt acts she has alleged with any degree of specificity are two incidents, both of which occurred no later than 2007.

The first incident involved the alleged arson of an RV by some unknown person. (Compl, ¶ 13.) According to Bryan, an unknown person parked an RV illegally in front of her house, then set it on fire in the hope that it would ignite two tall palm trees that were in front of her house, and that those in turn would lead to her house burning, which in turn would force her and her mother to move out. (*Id*.) This was thwarted when the City's own fire department put the fire out. (Compl., Ex. 1 at 40.) Then, Bryan says, the City towed the burned-out RV onto her lot. She says no towing company would agree to tow it away because she was not the owner, so it sat there for five months, after which the City threatened to fine her if she did not move both it and the two sailboats she was storing on the lot. (*Id.*) But some time before 2006,[3] all this was resolved in Bryan's favor. (*Id*., Compl., ¶ 13.)

The second incident involved an attempt by Rudinger in 2005 to trick her into telling her she needed to raise $600,000 for home upgrades, force her into a predatory loan, and arrange for the loan principal to be embezzled. (Compl., ¶¶ 69–74.) Then in 2013, when Bryan was confronted with records of numerous code violations, she accused Rudinger of being corruptly involved with MTGLQ. (*Id*., ¶ 75.) Bryan believes this angered Rudinger so much that he arranged for the March 29, 2017 search. (*Id.*, ¶ 76.) He did this, she says, by

---

[3] Bryan requested judicial notice of an incident report showing the fire occurred on December 21, 2007. (Bryan's Request for Judicial Notice, Ex. 2.) It may be that Bryan means the issue involving storage of the sailboats was resolved before 2006.

making false representations to the judge. (*Id*.) She says the deliberate falsehood is evident because the return said there was no new building or electrical work, the property had running water, and the "home and its surrounding property [were] always clean and attractively maintained." (*Id*., ¶ 77.)

These three incidents or groups of incidents occurred over at least a fifteen year period, and are strung together with conclusory and non-detailed claims of conspiracy, corruption, and bad faith, similar to those *Lacey* held were inadequate. The role of each conspirator, what they said to each other or agreed to do, and when they agreed to it are not alleged. Furthermore, the facts that are pled do not plausibly point to a conspiracy as opposed to a combination of misfortunes (such as fire damage to trees, or Bryan's inability to get the RV towed away for five months) and events logically related to the City's efforts to enforce its codes. Even if the City's suspicions about code violations were mistaken, it does not imply bad faith, much less a conspiracy to steal her home. To plead a conspiracy, a plaintiff must allege facts that, taken together raise a suggestion of an unlawful conspiratorial agreement. *Twombly*, 550 U.S. at 556–57. Facts that could just as well be explained by non-actionable conduct are not enough. *Id*. at 557.

Furthermore, it is evident Bryan has misinterpreted at least some of the facts. The warrant Judge Dahlgren signed, for example, said Robbie Hickerson (not Rudinger) appeared before him. The affidavit bears Hickerson's signature and identifies him as a code enforcement officer for the City. The return does not bear out Bryan's characterization of it as attesting to the home's clean and attractive condition and it does not show that the affidavit was filled with fabrications.

**Searches and Fourth Amendment Claim**

Bryan's nonspecific allegations of "at least four" unlawful searches of her home (Compl., ¶ 4) do not meet the pleading standard. Aside from the March 29, 2017 search, the only other search she is able to put in any time frame is one that occurred some time in 2005. Bearing in mind that she claims a conspiracy has been going on for years, vague

/ / /

references to other searches do not suffice to give Defendants fair notice of what Bryan is referring to, or what claims she might be bringing.

The only claim that is pled with any degree of specificity is the claim that law enforcement officers unlawfully conducted an inspection of the house on March 29, 2017. The judicially noticed records show that this inspection was conducted pursuant to a warrant issued by Judge Wahlberg. This warrant was an administrative, not a criminal warrant, and the standard for issuance of this kind of warrant is lower. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 319 (1978); *Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523, 534–38 (1967).

The warrant application was supported by Hickerson's declaration. It identifies complaints about conditions on the property, his own observations from outside the fence, and other facts gleaned from research. The declaration details a number of significant nuisances and probable code violations. It also says, based on complaints the City had received, that Hickerson had reason to believe ten to twenty people were living on the property in unsanitary and dangerous conditions. It also mentions accumulated debris, improper storage of boats and trailers, suspected problems with on-site wastewater treatment, construction of an unpermitted building, and various other violations and nuisances. The declaration says he sent a request to the property owner, lienholder, and tenants, requesting voluntary permission to inspect the property, and in return received an eight-page letter from Catherine and Betty Bryan, which he also attaches to the declaration. The declaration is also supported by photographic exhibits of the property. Several of these supporting documents, including the letter, an article about renovation of a building and water lines on the property, and the request for permission to inspect are also attached to the Complaint.

Based on the declaration, issuance of a warrant was proper under *Camara*. Bryan's eight-page letter admits there are many people on the property, but says they come there daily to do farm work, and do not live on the property. The letter admits there is an outbuilding (a greenhouse) on the property. Based on the letter's tone, and remarks made

///

in it about the presence of many people, officers would have had reason to be cautious when conducting the inspection.

The return was signed by another officer, Mike Peterson, who is also not a Defendant and not alleged to be part of the conspiracy. His statement supported some of the suspected violations, including an apparently compromised sewer system, no hot water or heat, a leaking roof and mold inside the house, and windows covered with boards or tarps. Although Peterson said he could not identify which parts of the structure had been permitted, he said some of the work clearly would not have been approved if permission had been sought. The return is supported by illustrative photographs which bear out Peterson's description, as well as earlier reports of accumulated debris.

The application, warrant, and return appear to be in order, and nothing about them suggests any Fourth Amendment or other constitutional violation. Although Bryan alleges that Rudinger made them (Compl., ¶¶ 76–77), the records themselves show otherwise. Judge Dahlgren's warrant says Hickerson, not Rudinger, appeared before him. Bryan argues that the return shows the declaration was replete with lies. (*Id*. ¶ 77.) But the return substantially bears out the declaration, mentioning safety hazards, *ad hoc* repairs, and the house's and property's overall poor maintenance.

Bryan's assertions that the inspection violated her rights or was unreasonable or illegal are almost entirely conclusory. A few factual details *might* support a Fourth Amendment claim for excessive in some other context. For example, Bryan alleges that eighteen officers arrived to conduct the inspection, that they had their guns drawn and pointed, and that they forced their way in. (Compl., ¶¶ 10, 61, 82.) In some other situation, this might amount to an unreasonable search. But given that Bryan in her letter had told them to expect a large number of people on site, had refused them entry, and had made clear she was hostile to them, sending a large number of officers and arming them was not unreasonable. Bryan has not alleged they failed to knock and wait, or otherwise request voluntary entry, nor that she was willing to let them in. *See Richards v. Wisconsin*, 520 U.S. 385 (1997) (citing *Wilson v. Arkansas*, 514 U.S. 927 (1995) (holding that the Fourth

Amendment embodies the common-law principle that, in general, officers should first knock and announce their identity and purpose, then wait a reasonable time before attempting forcible entry). The warrant authorized officers to enter the home, so if she did refuse them entry, they had authority to force their way in. A warrant is a command from a court. (*See* Docket no. 8-3, Ex. 2 (Warrant) at 37 (commanding officers to inspect the premises, and commanding them to have access to the interiors of all structures, boats and trailers).) A resident is not permitted to thwart or delay execution of a warrant, even an administrative inspection warrant on a non-urgent matter, by refusing to allow officers to enter.

Bryan seeks to hold the City liable under a *Monell* theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But as Defendants correctly point out, she has not adequately alleged any policy that led to any constitutional violation. She does nothing more than allege, in very general terms, that the City had a policy of permitting constitutional violations and abuses, and that it knew Rudinger was dishonest and corrupt. (Compl., ¶¶ 46–49.) This does not meet the pleading standard. *See AE* ex rel. *Hernandez v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012). *See also, e.g., Warner v. County of San Diego*, 2011 WL 662993 at *3–*4 (S.D. Cal., Feb. 14, 2011) (allegation that sheriff's department had an unlawful policy, custom, or habit of permitting or condoning various constitutional violations was insufficient to plead *Monell* liability).

**Sufficiency of Fraud Allegations**

Fraud must be pled specifically, *see* Fed. R. Civ. P. 9(b), and here it is not. Even if it is true that Rudinger, municipal code officer, in 2005 falsely told Bryan the property needed $600,000 worth of upgrades, that alone does not amount to fraud. *See Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1408 (9th Cir.1991) (setting forth elements of fraud under California law). The complaint goes on to claim, without providing any details, that she entered into a predatory loan with Rudinger, and that Rudinger forced them into foreclosure. (Compl., ¶¶ 69–74.) As noted above, the factual allegations in the complaint do not make out a plausible claim for fraud.

/ / /

The allegedly predatory loan was the subject of litigation in case 10cv1605, and the Court's findings there show her allegations here are implausible. Catherine Bryan did not enter into a loan with Rudinger; rather, Betty Bryan was the sole borrower. (Docket no. 308 in case 10cv1605 (Order Granting Summ. J.), at 5:24–26 and n.6.) Furthermore, the loan was intended for business purposes — specifically, for Betty Bryan's income generating properties — and was *not* intended to be used to pay contractors for correcting numerous code violations on this property, as Bryan now claims. (*Id*. at 6:6–19 (citing sworn statement by Betty Bryan and Catherine Bryan's verified complaint).)

Even assuming the other elements of a fraud claim were adequately pled, the elements of justifiable reliance and resulting damage, *see Milne*, 960 F.2d at 1408, were not. Whatever Rudinger told Bryan did not induce her to enter into a loan. And the loan her mother Betty entered into was for purposes unrelated to Rudinger's alleged misstatements.

Defendants also correctly point out that Cal. Govt. Code § 818.8 prevents the City from being liable for injuries caused by any of Rudinger's alleged misstatements.

**Statute of Limitations**

A claim may be dismissed as untimely under Rule 12(b)(6) if the running of the statute of limitations is apparent on the face of the complaint. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

In light of the many acts Bryan mentions, and the fact that the claims are not always well delineated, it is difficult to know which statute of limitations applies to each claim. The limitations period for Bryan's state law fraud claim is three years. *See Peel v. Brooks America Mortg. Corp.*, 788 F. Supp. 2d 1149, 1162 (C.D. Cal., 2011) (citing Cal. Civ. P. Code § 338(d)).[4] But some are shorter than three years. For example, § 1983 claims for Fourth Amendment violations and personal injury claims are subject to a two-year limitations period. *See Brown v. Kelly*, 2016 WL 5661751 at *3 (E.D. Cal., Sept. 30, 2016) (citing *Colony Cove Propertis, LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011). Nevertheless, three years

---

[4] Because this is a state law claim, it accrues as provided under state law, *i.e.,* from the date a plaintiff discovers the facts constituting the fraud. *Peel*, 788 F. Supp. 2d at 1162.

appears to be the longest applicable one, and it is on the fraud claim that Defendants' motion focuses.

Under California law, if the plaintiff brings the action more than three years after the alleged fraud, she has the burden of pleading facts showing she was not negligent in failing to discover the fraud sooner, and had no actual or presumptive knowledge of facts sufficient to put her on notice. *Id*. at 1162–63 (citing *Sun 'n Sand, Inc. v. United Cal. Bank*, 21 Cal.3d 671, 701–02 (1978)). Far from pleading such facts, Bryan has pled facts showing she knew or suspected a fraud much earlier, because she says she filed a mortgage fraud complaint in 2007. (Compl. at 35:1–2.) The only reason she did not add Rudinger and the City as defendants in that complaint, she claims, is that although she knew Rudinger's name, she did not know where to find him or whether he was a duly authorized City employee. (*Id*. at 34:23–35:2.) Bryan's earlier allegations, however, show she had ample reason to believe he was a City employee. In fact her claim depends on her belief that he was. And her claim that she did not know where to find him does not explain why she did not add him as a defendant in 2007.

In short, Bryan's own allegations make clear she knew of all the facts supporting her fraud claim against Rudinger and the City in 2007 at the very latest, and nothing stood in the way of her suing them then.

While state law prescribes the statute of limitations, federal law governs the time of accrual of § 1983 claims. *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986). Even if Bryan had adequately pled the existence of a conspiracy, the mere existence of a conspiracy does not necessarily extend the limitations period for her other claims. Under Ninth Circuit precedent, the cause of action flows from each overt act, not from the conspiracy or series of conspiracies. *Id*. What Bryan is describing is not a continuous violation, but a series of several overt acts over many years. Therefore, Bryan's causes of action over the years accrued with each separate overt act.

The many events she describes from 2005 through 2009 therefore accrued as soon as she had reason to know of her injury. *See Maldonado v. Harris*, 370 F.3d 945, 955 (9th

- 16 -

17cv697

Cir. 2004). The fact that she did not subjectively know she had a cause of action or did not investigate does not prevent the cause of action's accrual. *See Gibson*, 781 F.2d at 1344. Bryan has not alleged any facts that would reasonably amount to fraudulent concealment, so as to delay the accrual of her claims. *See id.* at 1344–45.

**Collateral Estoppel as to Elder Abuse Claim**

Defendants correctly point out that Bryan raised her elder abuse claim unsuccessfully in case 10cv1605. In that case, the Court found she lacked standing, and granted summary judgment to the defendants on that claim. (Docket no. 308, at 5:20–6:4.) She is estopped from challenging that determination now.

**Other State Law Claims**

Defendants argue that public employees are immune under Cal. Govt. Code § 820.4. They also argue, citing Cal. Govt. Code § 815.2, that because Rudinger and other employees are immune, the City as their employer also cannot be liable.

To the extent Bryan's claims arise from the March 29, 2017 search, they are correct. *See County of Los Angeles v. Sup.* Ct., 181 Cal. App. 4th 218, 228 (Cal. App. 2 Dist. 2009) (officers immune from tort claims arising from execution of warrant); *Hansen v. Calif. Dept. of Corr. & Rehabilitation*, 171 Cal. App. 4th 1537, 1547 (Cal. App. 5 Dist. 2008) (public employees acting within the scope of their employment for were immune from tort liability in connection with statements made to secure a warrant); *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1209 (Cal. App. 4 Dist. 1994) (recognizing immunity for officers against claims by anyone negligently injured in connection with judicial or administrative proceeding).

Furthermore, all claims other than those arising out of the March 29, 2017 search are time-barred.

**Conclusion and Order**

For the reasons set forth above, the complaint is **DISMISSED**. All claims other than Bryan's 42 U.S.C. §§ 1983, 1985(w), and 1986 claims arising out of the March 29, 2017 search are **DISMISSED WITH PREJUDICE**. If Bryan believes she can correct the defects

this order has identified, she may file an *ex parte* motion (without obtaining a hearing date) for leave to amend, no later than **April 5, 2018**. She must attach a copy of her proposed amended complaint as an exhibit. The proposed amended complaint may bring §§ 1983, 1985(w), and 1986 claims arising from the March 29, 2017 search. It must not include Bryan's fraud, elder abuse, or emotional distress claims. It may not include new parties or new claims. If she needs more time, she should request it by *ex parte* motion, explaining the reason. Bryan must not seek reconsideration of the Court's ruling or any part of it without complying with the chambers' Standing Order in Civil Cases, ¶ 4(j). If the motion for leave to amend does not comply with these requirements, it may be summarily denied.

If Bryan files a motion for leave to amend, defendants may file an opposition within 21 calendar days of the date her motion is docketed. No reply is to be filed without leave. The Court will set a hearing if appropriate; otherwise, the matter will be deemed submitted on the papers.

If Bryan does not file a motion for leave to amend within the time permitted, the Court will construe it to mean she believes she cannot correct the defects identified in this order, and this action will be dismissed without leave to amend.

**IT IS SO ORDERED**.

DATED: March 19, 2018

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge